IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAFARO BRADFORD TULLER SQUARE, LLC., | ) ) ) | CASE NO. 4:12CV00283 |
| | ) | MAGISTRATE JUDGE |
| Plaintiff, | ) ) | KATHLEEN B. BURKE |
| v. | ) ) | |
| | ) | **MEMORANDUM OPINION AND** |
| PETSMART, INC., | ) ) | **ORDER DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S** |
| Defendant. | ) | **COUNTERCLAIMS** |

Plaintiff Cafaro Bradford Tuller Square, LLC. ("Cafaro") has filed a Motion to Dismiss Defendant's Counterclaim (the "Motion to Dismiss").  Doc. 6.  Defendant PetSmart, Inc. ("PetSmart") opposes the Motion to Dismiss and both parties have filed Memoranda and Supplemental Memoranda in support of their respective positions.  Docs. 6-1, 10, 23, and 24.

The Motion to Dismiss raises questions of contract interpretation relating to the real estate tax provisions of a lease between the parties.  Cafaro, as the moving party, bears the burden of demonstrating that PetSmart's Counterclaim (the "Counterclaim") fails to state a claim upon which relief can be granted.  Based on the submissions of the parties, as more fully discussed below, the Court concludes that Cafaro has failed to meet its burden.  Accordingly, the Motion to Dismiss is DENIED.

**I.  Factual Background**

On or about July 8, 1991, Cafaro and Weisheimer Companies, Inc. entered into a lease agreement (the "Lease") for a retail space in the Tuller Square Shopping Center (the "Premises").  Doc 3, Answer ¶ 4.  The Premises is located at 6010 Sawmill Road, Dublin, Ohio.  Doc. 3, Counterclaim ¶ 1.  PetSmart became Weisheimer's successor in interest on the Lease in

1

March, 1994.  Countercl. ¶ 5.  Cafaro and PetSmart entered into a "Second Lease Amendment" on October 19, 2006.  Answer ¶ 6.

The provision of the Lease that is at the heart of the dispute in this case is Paragraph 3.3.1, pursuant to which PetSmart agreed to pay its pro rata share of Cafaro's Real Estate Tax Expense (the "Real Estate Tax Expense Provision").  Doc. 3-1, Ex. A, Lease ¶ 3.3.1.  The Real Estate Tax Expense Provision reads as follows:

> Commencing with the first day of the term of this Lease, Tenant will pay Tenant's pro rata share of the Real Estate Tax Expense.  Tenant waives any right it may have, by statute or otherwise, to protest all or any part of Real Estate Taxes Expense.  "Real Estate Tax Expense" means all real estate taxes and assessments, both general and special, imposed by federal, state or local government or any other taxing authority having jurisdiction over the Shopping Center . . . and all expenses incurred by Landlord in negotiating, reviewing, administering, appealing or contesting such taxes and assessments.  Real Estate Tax Expense includes the gross amount of real estate taxes, but such amount will not (i) be increased by any additional charges or penalties incurred by Landlord due to late payment of real estate taxes, or otherwise, or (ii) be decreased by any reduction received by Landlord due to early payment of real estate taxes, or otherwise.

Lease ¶ 3.3.1.

In its Complaint, filed on December 21, 2011, Cafaro alleges that PetSmart failed to pay sums totaling $117,030.80 owed by it under the Lease for its share of the Real Estate Tax Expense, insurance charge payments, and Common Area Maintenance payments.  Doc. 1-1; Complaint ¶ 10.

The Counterclaim, filed on February 13, 2012, alleges that Cafaro overbilled PetSmart for its share of the Real Estate Tax Expense for the years 1998 through 2010.  PetSmart discovered the alleged overbilling through an audit of its Real Estate Tax Expense for the years 1998 through 2008.[1]  The audit revealed that Cafaro calculated PetSmart's share of the Real Estate Tax Expense "based on the gross amount of the property tax bills, without taking into

---

[1] The record is unclear as to exactly when PetSmart performed the audit, but presumably sometime in 2008, before payment for 2009 became due.  Counterclaim, ¶ 8 ("PetSmart recently performed an internal audit . . .").

account the statutory 'reduction factor' as shown on Ohio property tax bills." Countercl. ¶ 9.[2] After the audit, PetSmart adjusted its payments for 2009 and 2010 to account for the statutory tax reduction factor, resulting in payments less than the amounts billed by Cafaro. Countercl. ¶¶ 69, 74. PetSmart asserts claims for breach of contract (Count I), unjust enrichment (Count II), and declaratory judgment (Count III). It seeks to recover $150,924.27, the amount it alleges was overbilled by Cafaro and paid by PetSmart for the years 1998 through 2008. In the declaratory judgment count, it seeks a "finding that the Lease requires PetSmart to pay its pro rata share of the property taxes for the Premises based only on the amount of taxes actually paid by Cafaro after the statutory reduction has been applied, and not the gross tax bill that is not imposed on Cafaro." Countercl. ¶ 9.

## II. Standard of Review

As set forth above, Cafaro bears the burden of showing that PetSmart's Counterclaim fails to state a claim upon which relief can be granted. To survive the Motion to Dismiss, PetSmart's Counterclaim need only "state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (clarifying the plausibility standard articulated in Twombly). "At this stage, the single question is whether plaintiff's complaint includes enough facts to state a claim to relief that is plausible on its face." Mediacom Se. LLC v. BellSouth Telecommunications, Inc., 672 F.3d 396, 399 (6th Cir. 2012) (citing Twombly, 550 U.S. at 570) (internal quotation marks omitted). The factual allegations of the pleading sought to be dismissed must be enough to raise a right to relief above the speculative level. Id. (citing

---

[2] The statutory tax reduction factor is codified at Ohio Rev. Code § 319.301. "The purpose of [the Statute], as amended, is to limit growth of real property tax revenues that would otherwise occur as a consequence of inflation of property values." DeRolph v. State, 78 Ohio St. 3d 193, 677 N.E.2d 733, 739 (1997). The statute "requires the application of tax reduction factors when property values increase due to reappraisal or update," and aims to "limit the effect of inflation in property values on growth of real property tax revenues." Id. at 221.

Twombly, 550 U.S at 570).  The court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.  Whittiker v. Deutsche Bank Nat'l Trust Co., 605 F.Supp.2d 914, 924-25 (N.D. Ohio 2009).

### III.  Discussion and Analysis

In its Memorandum in Support of the Motion to Dismiss, Cafaro makes two arguments: (1) "PetSmart has waived its right to file a claim challenging the Real Estate Tax Expense" (Doc. 6-1 at pp. 3-4); and (2) "[t]he Lease specifically contemplates that the Real Estate Tax Expense will be calculated without any consideration of the reduction factor."  Doc. 6-1, pp. 4-5.

Both arguments require application of established principles of Ohio law[3] respecting contract interpretation to the terms of the Real Estate Tax Expense Provision of the Lease. "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." Infocision Mgmt. Corp. v. Found. for Moral Law Inc., 5:08CV1342, 2010 WL 4365514, at *5

---

[3] Paragraph 8.9 of the Lease, captioned "Governing Law," provides:
    **Governing Law.**  This Lease will be governed by and construed in accordance with the applicable laws of the state identified as part of Landlord's address in the opening paragraph of this Lease.
Doc. 1-1, p. 37.  Ohio law governs the Lease because Cafaro's address in the opening paragraph of the Lease is in Brookfield, Ohio.

4

(N.D. Ohio Oct. 27, 2010) (citing Savedoff v. Access Group, Inc., 524 F.3d 754, 763 (6th Cir.2008)).  It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." Id. (citing United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr., 129 Ohio App.3d 45, 55 (Ohio App. 2d Dist. 1998) (quoting Foster Wheeler Enviresponse, Inc v. Franklin Cty. Convention Facilities Auth., 78 Ohio St.3d 353, 361 (1997) ("The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties . . . [which] is presumed to reside in the language they chose to employ in the agreement.")).

Where no ambiguity exists, courts must "apply the plain language of the contract." St. Mary's v. Auglaize County Bd. of Commrs., 115 Ohio St.3d 387, 390, 875 N.E.2d 561 (2007); see also Savedoff 524 F.3d at 763; accord Alexander v. Buckeye Pipe Line Co., 53 Ohio St.2d 241, 245–46, 374 N.E.2d 146 (1978) ("[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument.").  When the contract is unclear, or circumstances alter the meaning of the plain language, extrinsic evidence may be used to determine the intent of the parties.  Infocision, 2010 WL 4365514, at *5 (citing Graham, 76 Ohio St.3d at 313–14).  "Nevertheless, a court 'is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties' in the terms of their written contract." Savedoff, 524 F.3d at 763 (quoting Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (2003)).

Multiple plausible interpretations drawn from the contract language itself demonstrate ambiguity.  Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc., 1989 WL 63871, at *6, 876 F.2d 894 (6th Cir. June 15, 1989).  When ambiguity exists, only then may a court consider

5

extrinsic evidence.  Infocision, 2010 WL 4365514, at *5 (citing Covington v. Lucia, 151 Ohio App.3d 409, 414, 784 N.E.2d 186 (Ohio App. 10th Dist. 2003); see also Schachner v. Blue Cross & Blue Shield, 77 F.3d 889, 893 (6th Cir. 1996).  "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." Covington, 151 Ohio App.3d at 414; Schachner, 77 F.3d at 893.

In determining whether contractual language is ambiguous, the contract "must be construed as a whole."  Tri–State Group, Inc. v. Ohio Edison Co., 151 Ohio App.3d 1, 9, 782 N.E.2d 1240 (Ohio App. 7th Dist. 2002) (internal citation omitted).  Importantly, courts should "give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain."  Infocision, 2010 WL 4365514, at *6 (quoting Foster Wheeler Eviresponse, Inc., 78 Ohio St.3d at 362) (internal citation omitted).

### A.  PetSmart Did Not Waive Its Right To Challenge Cafaro's Billings For The Real Estate Tax Expense

Cafaro's first argument, that PetSmart waived its right to contest Real Estate Tax Expense amounts billed by Cafaro, relies on the second sentence of the Real Estate Tax Expense Provision, which reads: "Tenant waives any right it may have, by statute or otherwise, to protest all or any part of Real Estate Taxes Expense."  Doc. 3-1, p. 12.  Cafaro asserts that this sentence of Paragraph 3.3.1 "effectively prohibits PetSmart from raising a legal challenge to the expense." Doc. 6-1, p. 3.

In response, PetSmart claims that it did not waive its right to dispute "Cafaro's efforts to charge PetSmart for an amount in excess of the Real Estate Tax Expense."  Doc. 10, p. 4. PetSmart claims that the word "protest" refers to a formal complaint lodged with a taxing

6

authority and that the words "by statute or otherwise" preceding "to protest" support this interpretation. *See* Black's Law Dictionary 1344 (9th ed. 2009) (defining "protest" in the tax context as a "taxpayer's statement to the collecting officer that payment is being made unwillingly because the taxpayer believes the tax to be invalid."). PetSmart reasons that the waiver was intended to prevent a tenant from filing an independent protest with the taxing authority because that could prevent the tenant's landlord from filing a protest. Doc. 23, pp. 3-4 (noting that, under Ohio Rev. Code § 57115.19(A)(2), with certain exceptions, only one protest of property tax valuation per parcel may be brought in any three-year period). PetSmart also argues that "a common sense reading of the Lease would lead to the conclusion that Cafaro is not entitled to essentially invent a figure, call it the 'Real Estate Tax Expense,' and charge PetSmart whatever it wants without any right on the part of PetSmart to object." Doc. 23 p. 3.

The Court agrees with PetSmart's interpretation of the waiver sentence of the Real Estate Tax Expense Provision. A plain and common sense reading of the waiver provision leads to the conclusion that the lessee forfeited all rights to lodge a protest with a governmental taxing authority - but not to contest an amount billed by the lessor. PetSmart only waived its right to formally challenge the validity of the real estate taxes with the taxing authority. Accordingly, the waiver provision in the Lease does not bar PetSmart's claims regarding the payment of its pro rata share of real estate taxes.

**B.    The Real Estate Tax Expense Provision Is Ambiguous Because It Is Susceptible To More Than One Reasonable Interpretation**

At the core of the parties' dispute is the meaning of the term "Real Estate Tax Expense." PetSmart contends that the tax portion of the Real Estate Tax Expense means the amount of tax that is actually billed by a county auditor to the taxpayer (in this case, Cafaro), i.e., the amount the county auditor bills after applying the tax reduction factor. Cafaro asserts that the tax portion

7

Case: 4:12-cv-00283-KBB Doc #: 26 Filed: 07/06/12 8 of 12. PageID #: 338

of the Real Estate Tax Expense means the amount before the statutory tax reduction factor is applied by the auditor, i.e., the larger amount that is not actually billed by the county auditor.

PetSmart relies on the word "imposed" in the definition of "Real Estate Tax Expense" contained in the third sentence of the Real Estate Tax Expense Provision:

> "Real Estate Tax Expense" means all real estate taxes and assessments, both general and special, **imposed** by federal, state or local government or any other taxing authority having jurisdiction over the Shopping Center . . . .

Doc. 1-1, p. 14, ¶ 3.3.1 (emphasis added). PetSmart's Counterclaim equates the term "imposed" with "incurred," "charged," and "paid." Countercl. ¶ 9.[4] In its brief, PetSmart in essence argues that the plain and ordinary meaning of "imposed" is the same as these other words and that tax amounts that were never billed to Cafaro by a taxing authority cannot be said to have been "imposed" by a taxing authority and, therefore, do not fit within the Lease's definition of "Real Estate Tax Expense." Doc. 10, pp. 2-3.[5]

In contrast, Cafaro relies on the terms "gross amount" and "or otherwise" in the fourth sentence of the Real Estate Tax Expense Provision to support its position. That sentence reads:

> Real Estate Tax Expense includes the gross amount of real estate taxes, but such amount will not . . .(ii) be decreased by any reduction received by Landlord due to early payment of real estate taxes, or otherwise.

Lease ¶ 3.3.1 (emphasis added). Cafaro argues that the term "gross amount" in the fourth sentence must be read into the definition of Real Estate Tax Expense in the third sentence of the

---

[4] Paragraph 9 of PetSmart's Counterclaim states:
Since 1998, Cafaro has annually billed PetSmart for taxes that were not imposed on or incurred by Cafaro as landlord. Cafaro calculated PetSmart's pro rata share based on the gross amount of the property tax bills for the Premises, without taking into account the "reduction factor" as shown on Ohio property tax bills. This reduction factor is made pursuant to statute (Ohio Rev. Code 319.301) and reduces the amount of taxes actually charged to a property owner. Thus, Cafaro annually billed PetSmart for taxes that exceeded the amount Cafaro actually paid.

[5] PetSmart also argues that, to the extent the Lease did not specifically address Ohio's statutory tax reduction factor, that gap must be filled with a "good faith" interpretation, which would "mean that Cafaro should not bill PetSmart for taxes that were never billed to Cafaro." Doc. 10, p. 4.

8

Real Estate Tax Expense Provision.  Thus, in its opening Memorandum, Cafaro combines the two sentences, asserting that Real Estate Tax Expense "was defined as the 'gross amount of' 'all real estate taxes and assessments, both general and specific, imposed by federal, state or local government . . . .'"  Doc. 6, p. 1.  Cafaro in essence argues that interpreting "imposed" as PetSmart does would render the term "gross amount" meaningless, which would violate the principle that every provision of a contract be given effect, if possible.  Doc. 6, pp. 4-5.  *See Infocision,* 2010 WL 4365514, at \*5.  Cafaro also asserts that the words "or otherwise" at the end of the fourth sentence are broad enough to include the tax reduction factor as an amount that the Lease provides will not reduce the "gross amount" of real estate taxes that tenants may be billed for.  Doc. 6, p. 5.[6]

In their Supplemental Memoranda, both parties buttress their interpretations with citations to Ohio law and definitions found in legal dictionaries.  PetSmart notes that, by statute, the amount to be "levied" by a county auditor is the amount that reflects the deduction of the percentage constituting the tax reduction factor.[7]  Doc. 23, pp. 2-3 (quoting Black's Law Dictionary definition of "impose.").[8]  PetSmart asserts that "[t]he terms 'impose' and 'levy' are virtually interchangeable."  Doc. 23, p. 3.  Thus, PetSmart reasons, the amount "levied" under

---

[6] Responding to Cafaro's "or otherwise" argument, PetSmart claims that the decrease provision was not meant to apply to Ohio's statutory tax reduction factor but, rather, to items such as discounts available in states such as Florida for early payment of taxes.  Doc. 10, pp. 7-8.  While Cafaro scoffs at PetSmart's argument as making no sense since the store at issue is in Ohio, not Florida (Doc. 24, p. 1), the generic wording of the Governing Law provision of the Lease, quoted in footnote 3 above, lends support to the notion that the Lease was drafted for use in more than one state.

[7] The statutory tax reduction factor provides, in relevant part:
> The auditor . . . shall reduce the sum to be <u>levied</u> by such tax against each parcel of real property in the district by the [tax reduction] percentage so certified for its class.

Ohio Rev. Code § 319.301(D)(2)(emphasis added).

[8] "Levy" is defined as "[t]o impose or assess (a fine or a tax) by legal authority <levy a tax on gasoline>."  Black's Law Dictionary 991 (9th ed. 2009) (internal quotation marks omitted).

the statute, i.e., the amount after the tax reduction factor has been deducted, is the amount "imposed" on Cafaro under the Lease. Doc. 23 at pp. 2-3.

In its Supplemental Memorandum, Cafaro disputes PetSmart's use of the term "charged" as a synonym for "imposed" by quoting Article 12, Section 2a(C)(2) of the Ohio Constitution, which governs exemptions and limitations on tax rates. Doc. 24, p. 2. This provision states, in relevant part:

> With respect to each voted tax authorized to be levied by each taxing district, the <u>amount of taxes imposed</u> by such tax against all land and improvements thereon in each class <u>shall be reduced</u> in order that the <u>amount charged</u> for collection against all land and improvements in that class in the current year, exclusive of land and improvements not taxed by the district in both the preceding year and in the current year and those not taxed in that class in the preceding year, equals the <u>amount charged</u> for collection against such land and improvements in the preceding year.

[Ohio Const. art. 12](), § 2a(C)(2) (emphasis added). This section distinguishes between the "amount of taxes imposed" and the "amount charged for collection." Cafaro argues that this distinction is further evidence that taxes imposed by the taxing authority is different that taxes charged by the taxing authority. Cafaro contends that this distinction undermines the basic premise of PetSmart's counterclaim that taxes imposed must mean taxes charged.

Additionally, Cafaro's Supplemental Memorandum resorts to extrinsic evidence by attaching an unauthenticated copy of its Franklin County tax bill for the first half of 2010.[9] The Tax Calculation portion of the bill indicates, on line 1, that "Real Estate Taxes" are 188,692.36 and, on line 2, that the "Tax Reduction" is 46,267.84, an amount that is deducted on the bill to calculate the "amount due." Cafaro quotes the definition of "gross" in Ballantine's Law Dictionary (defining "gross" as meaning "without deduction. As a whole or in an entirety;

---

[9] As discussed above, in ruling on a motion to dismiss, a court, subject to certain exceptions, may not consider extrinsic evidence. The tax bill attached to Cafaro's Supplemental Memorandum arguably falls within one of the exceptions since the Counterclaim refers to tax bills. Doc. 3, p. 5, Countercl. ¶ 9

total."). Doc. 24, p. 2. Cafaro then asserts that "it is clear the Real Estate Tax Expense [as defined in the Lease] refers to the 'Real Estate Taxes' on the tax bill, as that amount encompasses the amount of taxes owed 'without deduction,' 'as a whole.'" Doc. 24, p. 2. Cafaro's submission of the tax bill and its related argument are inapposite on the Motion to Dismiss because, as noted above, the Court may not consider extrinsic evidence unless and until it has determined that contract language is ambiguous. *Infocision,* 2010 WL 4365514, at \*5; *Covington*, 11 Ohio App 3d at 414.

In its opening Memorandum, as an alternative to its plain meaning argument, PetSmart asserts that, to the extent the Court finds the Lease terms ambiguous, it "should be allowed to take discovery to show that Cafaro's interpretation was not the intent of the parties." Doc. 10, p. 3. PetSmart claims that discovery would show that: (1) the original parties did not intend for the tenant to pay taxes that weren't actually paid by Cafaro; (2) Cafaro drafted the lease, and thus any ambiguity should be construed against Cafaro; and (3) the terms in the Lease preventing increases or decreases in the Real Estate Tax Expense were not meant to apply to Ohio's statutory tax reduction factor. Doc. 10, p. 7.

Having considered the pleadings and the submissions of the parties on the Motion to Dismiss, the Court concludes that the Real Estate Tax Expense Provision is ambiguous. "Contractual language is ambiguous where . . . the language is susceptible of two or more reasonable interpretations." Infocision, 2010 WL 4365514, at \*5 (citing Covington, 151 Ohio App.3d at 414). Here, each of the parties has provided a reasonable interpretation of the Real Estate Tax Expense Provision and has supported its interpretation with well-reasoned arguments and citations to Ohio law as well as dictionary definitions. Thus, the submissions of the parties establish that the Real Estate Tax Expense Provision is ambiguous. The fact that one of the

11

parties, Cafaro, has already gone outside the four corners of the Lease by submitting extrinsic evidence to shed light on the meaning of the Real Estate Tax Expense Provision supports this conclusion.  While the Counterclaim ultimately may not survive a motion for summary judgment, dismissal at this early stage is inappropriate.

## IV.  Conclusion

For the reasons set forth above, Cafaro's Motion to Dismiss Defendant's Counterclaim is DENIED.  Doc. 6.

IT IS SO ORDERED.

Dated: July 6, 2012

Kathleen B. Burke
United States Magistrate Judge